[Civil No. 3843.   Filed July 15, 1937.]

[70 Pac. (2d) 324.]

GEORGE VUKOVICH, Appellant, v. GEORGE OSSIC, Appellee; THE VALLEY NATIONAL BANK, a National Banking Association, Garnishee-Appellee.

Messrs. Cox & Moore, for Appellant.

Messrs. Elliott & Clingan, for Appellee.

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, for Garnishee-Appellee.

McALISTER, C. J.—On June 8, 1936, George Vukovich filed an action against George Ossic for $716.46 for money loaned and meals furnished, and at the same time caused to be issued a writ of garnishment against the Valley National Bank. It was served immediately and the following day the garnishee answered that it was indebted to George Ossic in the sum of $1,337.45, that amount being on deposit with it in his name. Immediately thereafter defendant applied for an order quashing the writ of garnishment on the ground that the money on deposit had been paid to him by the Industrial Commission of Arizona under the Workmen's Compensation Law on account of personal injuries received by him in the course of his employment and was exempt from attachment, garnishment and execution under the provisions of that law. The application to quash was granted and the plaintiff has appealed from that order.

The only question presented by the record is whether the funds in the bank, admittedly moneys paid to appellee as compensation for injuries received in the course of his employment, are exempt from garnishment under the provisions of chapter 24, article 5,

Revised Code of 1928, particularly section 1442 thereof, reading as follows:

"*Compensation not assignable; exempt from levy; payment to non-residents.* Compensation, whether determined or not, shall not, prior to the delivery of the warrant therefor, be assignable; it shall be exempt from attachment, garnishment and execution, and shall not pass to another person by operation of law; however, payment to the consular agent, or his representative, of the nation of which a dependent is a resident or subject, of compensation due such dependent residing outside of the United States, any power of attorney to receive or receipt for the same to the contrary notwithstanding, shall be a full discharge of the benefits or compensation, as if made directly to the beneficiary."

The positions of the parties are these: Appellant contends that the exemption from garnishment of funds paid under the Workmen's Compensation Law ends when they are received by the injured employee, while appellee claims that this protection continues so long as these funds are his and may be traced and identified. Which of these views is correct depends upon the meaning of § 1442, but if a consideration of that section still leaves the matter in doubt, the purpose of the Workmen's Compensation Law, the evil it was sought to remedy, may be looked to for help in arriving at the correct answer.

It will be observed that this section is divided into three parts, separated by semicolons. The first part refers to the question of the assignability of compensation, and reads,

"Compensation, whether determined or not, shall not, prior to the delivery of the warrant therefor, be assignable."

Clearly the purpose here was to render it impossible for the injured employee or his dependents to assign his compensation before it was paid to him or them.

The second part relates to the matter of the exemption of compensation, and states,

"it shall be exempt from attachment, garnishment and execution, and shall not pass to another person by operation of law."

Plainly the purpose here was to except compensation from attachment, garnishment and execution, and the possibility of its passing to another by operation of law, that is, to give it such a status that the employee could not be deprived of it without his consent.

The third part concerns the question of payment of compensation to non-resident dependents, its language being this:

"however, payment to the consular agent, or his representative, of the nation of which a dependent is a resident or subject, of compensation due such dependent residing outside of the United States, any power of attorney to receive or receipt for the same to the contrary notwithstanding, shall be a full discharge of the benefits or compensation, as if made directly to the beneficiary."

██ In support of the proposition that exemptions from garnishment, the same as the lack of power to assign, ends when compensation has been paid to the employee, appellant claims that the legislature intended the expression, "prior to the delivery of the warrant therefor," to apply to exemptions from garnishment just as it does to the matter of assignability and, hence, that the second part of this section should be construed as though it read,

"it (compensation) shall, prior to the delivery of the warrant therefor, be exempt from attachment, garnishment and execution, and shall not pass to another person by operation of law."

That such was the purpose, he contends, is shown by the clause, "and shall not pass to another person

by operation of law,'' his reason therefor being that it is possible for compensation to pass by operation of law only prior to its payment to an injured employee, not afterwards. While it is not clear just what particular proceedings the legislature had in mind by the use of this language, yet, as we view it, the effect of it is, not to strengthen the idea that compensation is no longer exempt after it reaches the employee or his dependents, but to render it impossible for anyone to deprive him of it without his consent, either before or after it reaches him, by a proceeding of any character, including attachment, garnishment and execution. By the broad statement that compensation is exempt, without any limitation as to time, the legislature evidently intended that the exemption should continue so long as compensation may be properly regarded as such, and it does not lose its character as compensation merely because it is paid to an employee and deposited in the bank but retains this status so long as it is kept intact and unmixed with his other funds. As was well stated by the court in *Gaddy* v. *First Nat. Bank,* 115 Tex. 393, 283 S. W. 472, 473, in construing a statute quite similar to section 1442, *supra:*

'' . . . the act does not declare that the exemption shall terminate the minute the employee receives the money, or a few days thereafter or six months thereafter. It says the compensation shall be exempt. If the legislature had intended to limit the period of exemption, it could very easily have so stated. It did not do so. We are unwilling to amend their own act by inserting therein the limitation here contended for, particularly when such amendment thereto would practically destroy the beneficial effect of the exemption.

''If the exemption shall obtain only until the employee receives the compensation, it would never benefit him. He cannot use it, because nonassignable, until he actually collects it. Then, if, at that very minute, it is subject to debts and legal writs, there would not be a minute when he could call it his own.

He would really have no exemption. Under such an amendment, an employee could perhaps bury his money in the ground or hide it away in his hose or dresser drawer, but he could not bank it as its better protection would require.''

■■ If a study of section 1442 left its meaning doubtful, a consideration of the Workmen's Compensation Law (Revised Code of 1928, § 1391 et seq., as amended) itself would aid in solving it. Keeping in mind that the purpose of that act is to compel industry to take care of those injured in its service, during their incapacity, and thus lift that burden from the shoulders of relatives, friends and the public, it would appear plain that it was not the intention that the funds paid him or them to meet this need should be taken from either and applied to other purposes. The time help should be extended is after one has been injured and is unable to work, or has been taken by death from his dependents, and, this being true, it is inconsistent with the act itself and utterly out of harmony with the end it was enacted to accomplish to hold that compensation is not exempt after it reaches the employee but may be taken by creditors in payment of other debts. The legislature, prompted by a desire to protect the employee in the use of his compensation has, to use the very apt and appropriate language of the court in *Gaddy* v. *First Nat. Bank, supra,*

''created a sacred fund and set it aside for the exclusive benefit of the injured employee and his dependents. As long as he keeps it apart from his other funds, it is not subject to his debts. . . . It also provides cash for food and shelter for the widow and orphans when the employee has passed away because of injuries received in the course of his employment. When a man is down and unable to work, it is practically essential that he have this help. It must be his and not subject to the claims of his creditors. . . .

If all he has is the mere pittance allowed him under the Compensation Act, then while he is unable to work, as he is while receiving compensation, he must not be disturbed in the possession of such compensation.''

And this is just as true of compensation that has been converted into a lump sum payment as it is of that received in installments, because it is still for the purpose of enabling the employee to live during his disability. *Gaddy* v. *First Nat. Bank, supra; Surace* v. *Danna,* 248 N. Y. 18, 161 N. E. 315, 316.

In construing the exemption clause of the Workmen's Compensation Law of New York state (Consol. Laws, chap. 67), which provides that ''Compensation of benefits *due* under this chapter . . . shall be exempt from all claims of creditors,'' etc. (section 33), the Court of Appeals, speaking through Justice CARDOZO, in *Surace* v. *Danna, supra,* states:

''We are blind to the policy of workmen's compensation if we say that the purpose of the exemption, thus emphatically guarded, is to promote the convenience of the state by withdrawing the occasion for conflicting claims of ownership. There shines through the statute, both here and in related sections, a worthier conception of the duty of the state to the helpless and hapless in an industrial society. . . . At the root of the exemption is something more benignant than bureaucratic formalism, a dislike of complicating documents. *The exemption like the compensation is for the protection of the man.* [Italics ours.] . . .

'' 'It is quite obvious,' we said, 'that such an exemption can produce no beneficial effect, unless it is extended beyond the letter of the act, and given life and force, according to its evident spirit and meaning.' ''

■ Appellant urges upon us the proposition that if compensation is exempt after it is paid, the injured employee may, pending an award, as seemingly was done in this case, secure help upon a promise to reimburse out of his compensation and later refuse to

comply with his agreement. This is true, because compensation may not be taken in payment of debts of any character. The act makes no distinction between the obligations of an employee, though an exception in favor of a person who, at his request, has during this period furnished him the necessities of life, would not be out of place, but in the absence of such provision one who acts upon his assurance of repayment from compensation, does so at his peril. In view, therefore, of the protection thrown around compensation, one must remember that in doing something even so worthy as aiding an injured employee or his dependents, it is necessary that he look to the honesty and integrity of the person he has aided for a return of his advances, for in no kind of a proceeding may compensation be taken for this purpose.

The order quashing the writ of garnishment was correct, and is hereby affirmed.

ROSS and LOCKWOOD, JJ., concur.